UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-23486-Civ-COOKE/GOODMAN

ETHERIA ROLLE-COLLIE,

    Plaintiff,

vs.

STATE OF FLORIDA DEPARTMENT OF
TRANSPORTATION,

    Defendant.

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Etheria Rolle-Collie brings this action against Defendant State of Florida Department of Transportation, alleging national origin and race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").[1] Both Plaintiff and Defendant have moved for summary judgment, and their respective motions are fully briefed and ripe for review. For the reasons set forth below, Plaintiff's Amended Motion for Summary Judgment (ECF No. 66) is **DENIED**, and Defendant's Motion for Summary Judgment (ECF No. 64) is **GRANTED**.

## I. BACKGROUND

Plaintiff is an African American woman who, during the relevant time period, was an employee of Defendant. *Def.'s Stmt. of Facts*, ECF No. 63, at pp. 1, 4. While Plaintiff has a Bachelor of Science degree in computer information systems, *Pl.'s Ex. 2*, ECF No. 67, at p. 21, her work for Defendant did not require any knowledge of engineering. *Def.'s Stmt. of Facts*, ECF No. 63, at p. 4. On March 1, 2017, Defendant publicly posted an advertisement for the position of Contract Support Specialist ("CSS"). *Id.* at p. 2. The advertisement stated

---

[1] Initially, Plaintiff also alleged age discrimination under the Age Discrimination in Employment Act of 1967. *Compl.*, ECF No. 1, at pp. 7–8. The Court dismissed that count of the Complaint without prejudice, allowing Plaintiff until July 11, 2018, to file an amended complaint curing the deficiencies in the original. *Order*, ECF No. 59, at p. 5. Plaintiff did not file an amended complaint, and she now states that she will "not undertake the count II age discrimination claim." *Pl.'s Mem. of Law in Opp'n*, ECF No. 68, at p. 1 n.1. This Order therefore does not address that claim.

1

that the minimum educational requirement for the CSS position was a "High School diploma or its equivalent." *Pl.'s Ex. 1*, ECF No. 67, at p. 14. However, it also stated that the position entailed "advanced engineering work," requiring the "[a]bility to solve problems relating to engineering" and "to analyze and interpret engineering data." *Id.*

Plaintiff applied for the CSS position on March 3, 2017. *Def.'s Stmt. of Facts*, ECF No. 63, at p. 4. The new position evidently would have brought with it a modest raise in Plaintiff's salary. *Pl.'s Mem. of Law in Opp'n*, ECF No. 68, at p. 7. On March 20, 2017, while her application was pending, Plaintiff's supervisor "asked Plaintiff if she would consider an increase in salary in lieu of pursuing the position[.]" *Id.* It appears that Plaintiff's managers offered her the raise because they were concerned that the "small amount of money" the CSS position might provide was not worth Plaintiff's being subjected to a "probationary period" in the new role. *Id.*[2] It appears that Plaintiff turned the offer down.

The application process for the CSS position consisted of three phases: 1) a written application; 2) an in-person interview; and 3) a work sample, meaning "[a] task exercise, representative of work actually done on the job[.]" *Pl.'s Ex. 6*, ECF No. 67, at p. 53; *see also Def.'s Stmt. of Facts*, ECF No. 63, at p. 4. According to Defendant's official recruitment policy, "[w]ork samples should be administered on a pass/fail basis." *Pl.'s Ex. 6*, ECF No. 67, at p. 53.

The selection committee in charge of this application process was composed of three Hispanic women. *See Pl.'s Mem. in Supp.*, ECF No. 67, at pp. 1–2; *Def.'s Stmt. of Facts*, ECF No. 63, at p. 4. All three members of the committee have attested that they did not know for "a certainty" what Plaintiff's nationality was. *Aff. of Barbara Espino*, ECF No. 63-2, at p. 4; *Aff. of Maria Rodriguez*, ECF No. 62-3, at p. 4; *Aff. of Ana Alvarez*, ECF No. 63-4, at p. 4.

In her application materials and in her interview, "Plaintiff did not indicate . . . that she had any specific educational background or work experience related to engineering and contract management outside of wage compliance." *Def.'s Stmt. of Facts*, ECF No. 63, at p. 7. In her work sample, Plaintiff received a score of 170 out of 300, or approximately 57

---

[2] Plaintiff, who is acting *pro se*, does not make it entirely clear what evidence she is relying on regarding this alleged March 20 offer. Nevertheless, in light of the lenience afforded *pro se* litigants, *see, e.g.*, *Hales v. City of Montgomery*, 347 F. Supp. 2d 1167, 1171 (M.D. Ala. 2004), and the fact that Defendant does not appear to refute these specific assertions, they will be taken as true for purposes of the instant Order. *See* S.D. Fla. L.R. 56.1(b).

2

percent. *Id.* at p. 8. It appears that this numerical grading of the work samples, which Defendant did for "all candidates[]" for the CSS position, marked a deviation from the official "pass/fail" policy noted above. *Def.'s Reply Mem. of Law*, ECF No. 72, at p. 2 n.2.

Plaintiff was not selected for the CSS position. *Def.'s Stmt. of Facts*, ECF No. 63, at p. 6. Instead, Defendant hired Carmen Negron, an individual who held both a Bachelor of Science degree and training certification in engineering. *Id.*; *see also Pl.'s Ex. 3*, ECF No. 67, at p. 28. Ms. Negron had approximately ten years of relevant work experience, including as a "Project Engineer" in "two large scale projects" costing approximately $80 million each, and as a "Project Manager" in a construction project costing almost $200 million. *Pl.'s Ex. 3*, ECF No. 67, at pp. 26–27. Ms. Negron also received a score of 290 out of 300 on her work sample, or approximately 97 percent. *Pl.'s Ex. 5*, ECF No. 67, at p. 46. Ms. Negron is Hispanic and was born in Puerto Rico. *Aff. of Barbara Espino*, ECF No. 63-2, at p. 6.

In her motion papers, Plaintiff argues that she was the "superior . . . applicant" for the CSS position, and that her non-selection was "based on [her] Race and National Origin." *Pl.'s Mem. of Law in Opp'n*, ECF No. 68, at pp. 1, 3. Plaintiff argues that Defendant's proffered reason for her non-selection is a pretext. In support of that argument, Plaintiff points to: 1) the fact that Defendant gave the applicants' work samples specific grades, rather than the "pass/fail" assessments called for in Defendant's hiring policy; and 2) the fact that the job posting stated that the minimum educational requirement was a high school degree, from which Plaintiff seems to infer that an applicant's post-high school education was irrelevant to his or her qualification for the job. *Id.* at pp. 1–2.

Defendant's arguments in its own motion papers largely boil down to a single point: that "Plaintiff was simply not the most qualified candidate for the position[.]" *Def.'s Mot.*, ECF No. 64, at p. 6.

## II. LEGAL STANDARDS

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* In reviewing a motion for summary judgment, the Court is "required to view the evidence and all factual inferences therefrom in the light most favorable to the non-moving

3

party, and resolve all reasonable doubts about the facts in favor of the non-movant." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (quoting *Skop v. City of Atlanta*, 485 F.3d 1130, 1143 (11th Cir. 2007)).

"Title VII of the Civil Rights Act of 1964 . . . prohibits employment discrimination on the basis of race, color, religion, sex, or national origin." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). More specifically, Title VII's protection against "intentional discrimination (known as 'disparate treatment') . . . . makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Id.*

"A plaintiff may establish a claim of illegal disparate treatment through either direct evidence or circumstantial evidence." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004). "Direct evidence is 'evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption.'" *Id.* at 1086 (quoting *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 125 F.3d 1390, 1393 (11th Cir. 1997)). "'[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of' some impermissible factor constitute direct evidence of discrimination." *Wilson*, 376 F.3d at 1086 (quoting *Rojas v. Florida*, 285 F.3d 1339, 1342 n.2 (11th Cir. 2002)). By contrast, if evidence "suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence." *Wilson*, 376 F.3d at 1086.

"In evaluating disparate treatment claims supported by circumstantial evidence, [courts] use the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green* . . . and *Texas Department of Community Affairs v. Burdine*[.]" *Id.* at 1087 (citations omitted). "Under this framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally." *Id.* "A plaintiff establishes a prima facie case of disparate treatment by showing that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." *Id.* Additionally, the plaintiff must "present . . . evidence that the decision-maker knew" that the plaintiff was a member of the class in question. *Lubetsky v. Applied Card Sys., Inc.*, 296 F.3d 1301, 1306 (11th Cir. 2002).

4

"When the plaintiff establishes a prima facie case, which creates the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." *Wilson*, 376 F.3d at 1087. "The employer 'need not persuade the court that it was actually motivated by the proffered reasons.'" *Id.* (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981)). "If the employer satisfies its burden by articulating one or more reasons, then the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination." *Wilson*, 376 F.3d at 1087.

"[A] reason is not pretext for discrimination 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (quoting *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1163 (11th Cir. 2006)). Thus, "[i]n the context of a promotion, 'a plaintiff cannot prove pretext by simply arguing or even by showing that [s]he was better qualified than the [person] who received the position [s]he coveted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by'" discriminatory factors. *Springer*, 509 F.3d at 1349 (quoting *Brooks*, 446 F.3d at 1163). Additionally, "[t]he mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual." *Springer*, 509 F.3d at 1350 (quoting *Randle v. City of Aurora*, 69 F.3d 441, 454 (10th Cir. 1995)).

Finally, despite the shifting of burdens under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Springer*, 509 F.3d at 1347.

### III. DISCUSSION

Plaintiff argues that Defendant, in not hiring her for the CSS position, discriminated against her on the basis of both her national origin and race. As Plaintiff does not appear to dispute, the record in this case contains no such "blatant remarks" as would constitute direct evidence of discrimination. *Wilson*, 376 F.3d at 1086 (quoting *Rojas*, 285 F.3d at 1342 n.2). Accordingly, the Court must apply the *McDonnell Douglas* framework used "[i]n evaluating

5

disparate treatment claims supported by circumstantial evidence." *Wilson*, 376 F.3d at 1087.

Defendant argues that Plaintiff has not established a prime facie case under the first step of *McDonnell Douglas*. *Def.'s Mot.*, ECF No. 64, at pp. 3–5. Defendant argues that: 1) Plaintiff "cannot establish that she was qualified for the [p]osition"; 2) Ms. Negron was born in Puerto Rico, and as a United States citizen was of the same "national origin" as Plaintiff; and 3) all three members of the selection committee "were unaware of the Plaintiff's national origin." *Id.* at pp. 4–5. Ultimately, however, the Court does not need to address these contentions because, even if Plaintiff could establish a prima facie case, there is no evidence in the record to support a finding of discriminatory intent.

Under *McDonnell Douglas*, "[w]hen the plaintiff establishes a prima facie case, . . . the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." *Wilson*, 376 F.3d at 1087. This is a burden "of production, not persuasion," *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000), and it is "exceedingly light." *Perryman v. Johnson Prod. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983). Here, Defendant has successfully articulated a nondiscriminatory reason for its non-selection of Plaintiff—namely, that Plaintiff was "not the most qualified candidate for the position[.]" *Def.'s Mot.*, ECF No. 64, at p. 6. Thus, "the burden of production shifts" back again to Plaintiff, "to offer evidence that [Defendant's] alleged reason . . . is a pretext for illegal discrimination." *Wilson*, 376 F.3d at 1087.

In her motion papers, Plaintiff relies on two specific grounds in attempting to show pretext: 1) the fact that Defendant gave numeric scores to all of the applicants' work samples, rather than simple "pass/fail" assessments; and 2) the fact that Defendant's posting for the CSS position stated that the minimum educational requirement was a high school degree. *Pl.'s Mem. of Law in Opp'n*, ECF No. 68, at pp. 1–2. Plaintiff also notes more than once that her managers supposedly offered her an "increase in salary to not pursue [the CSS] position," although Plaintiff does not explain the import of that fact or directly tie it to her argument for pretext. *Pl.'s Mem. in Supp.*, ECF No. 67, at p. 4.

With respect to Defendant's grading of the work samples, Plaintiff's argument seems to have lost the force it had in the Complaint. There, Plaintiff alleged that other, Hispanic applicants had been "given favorable treatment" because their work samples were *not* graded in the way Plaintiff's was. *Compl.*, ECF No. 1, at pp. 4–5. As it turns out, however, "all

candidates' work samples were scored" in the same way. *Def.'s Reply Mem. of Law*, ECF No. 72, at p. 2 n.2. Ms. Negron, for example, received a score of 290 out of 300 on her work sample. *Pl.'s Ex. 5*, ECF No. 67, at p. 46.

Still, Plaintiff points out that such grading was a departure from Defendant's official recruitment policy, which states that "[w]ork samples should be administered on a pass/fail basis." *Pl.'s Ex. 6*, ECF No. 67, at p. 53. That may be so, notwithstanding Defendant's somewhat strained argument that the policy's use of the word "should" shows that it was not a binding command. *Def.'s Mot.*, ECF No. 64, at p. 9. "Yet, even where [a defendant's selection process] violates corporate personnel policies, it does not necessarily indicate racial discrimination." *Springer*, 509 F.3d at 1350. "The mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual." *Id.* (quoting *Randle*, 69 F.3d at 454). Here, the record contains no evidence that Defendant's grading of the work samples was based on discriminatory intent, or that it reflected anything other than "the best possible way" to evaluate candidates for a position involving "specialized knowledge and experience." *Aff. of Barbara Espino*, ECF No. 63-2, at p. 3.

Next, Plaintiff attempts to show pretext by pointing to Defendant's advertisement for the CSS position, which stated that the minimum educational requirement for the position was a "High School diploma or its equivalent." *Pl.'s Ex. 1*, ECF No. 67, at p. 14. Plaintiff appears to infer from this that a candidate's post-high school education was irrelevant, and that Defendant's reference to Ms. Negron's college degree and certification in engineering is therefore a pretext. *See Pl.'s Mem. of Law in Opp'n*, ECF No. 68, at p. 2. In response, Defendant notes that it has found "no case law" on this point, but that "it seems axiomatic" that an employer can "select[] a candidate with an educational level that is higher than the minimum requirement[.]" *Def.'s Mot.*, ECF No. 64, at pp. 10–11. The Court agrees. The fact that a high school degree was the *minimum* educational level required for the position hardly implies that a candidate's college degree and professional certification were irrelevant or improper factors for Defendant to consider in seeking the best person for the job.

Plaintiff also states in her motion papers that, after she applied for the CSS position, her managers "asked [her] if she would consider an increase in salary in lieu of pursuing the

position[.]"*Pl.'s Mem. of Law in Opp'n*, ECF No. 68, at p. 7. Plaintiff does not explain how this demonstrates discriminatory intent. Indeed, according to Plaintiff's own account, her managers seem to have made the offer because they valued Plaintiff in her current role, and because they believed that Plaintiff's moving to the new role, which would require her to undergo a "probationary period," was not worth the "small amount of money" the new role promised. *Id.* Plaintiff may be pointing to this incident as another deviation from Defendant's formal hiring policy, and as a sign that her candidacy was rejected before the selection process had been properly completed. As already noted, however, an employer's "fail[ure] to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent." *Randle*, 69 F.3d at 454; *cf. Springer*, 509 F.3d at 1350 (rejecting plaintiff's argument "that pretext can be inferred from [the] pre-selection of [another candidate] without the internal posting of the position required by [defendant's] corporate policy"). Here, Plaintiff has provided no basis for finding that her managers' offer of "an increase in salary" was rooted in discriminatory intent.

Finally, Plaintiff has included in her motion papers a number of charts purporting to show "Defendant['s h]iring statistics in [the] same department during [the] past 3 years," as well as Plaintiff's "[s]uperior [q]ualtifications" as compared to Ms. Negron. *Pl.'s Mem. in Supp.*, ECF No. 67, at pp. 4–6; *Pl.'s Mem. of Law in Opp'n*, ECF No. 68, at pp. 3–7. With respect to Plaintiff's use of statistics, such evidence is "virtually meaningless" without an "analytic foundation." *Brown v. Am. Honda Motor Co.*, 939 F.2d 946, 952 (11th Cir. 1991). Here, Plaintiff has not shown how many members of the relevant protected classes have applied to work for Defendant, or what the "success rate" of those applicants has been. *Id.* Therefore, Plaintiff's statistical charts offer no support to her claim.

As for the charts in which Plaintiff seeks to show her superiority as a candidate for the CSS position, Defendant correctly points out that Plaintiff "fails to cite any record evidence in support of the purported experience and traits, or lack thereof, of Ms. Negron." *Def.'s Reply Mem. of Law*, ECF No. 72, at p. 2. But even more to the point, "a plaintiff cannot prove pretext by simply arguing or even by showing that [s]he was better qualified than the [person] who received the position [s]he coveted." *Springer*, 509 F.3d at 1349 (quoting *Brooks*, 446 F.3d at 1163). Rather, "a plaintiff must show that the disparities between the successful applicant's and h[er] own qualifications were 'of such weight and significance

that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" *Springer*, 509 F.3d at 1349 (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004)); *see also Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 (11th Cir. 2001) (plaintiff "must adduce evidence that the disparity in qualifications is 'so apparent as virtually to jump off the page and slap you in the face'" (quoting *Denney v. City of Albany*, 247 F.3d 1172, 1187 (11th Cir. 2001))). Simply put, in light of what has already been stated about Plaintiff's and Ms. Negron's respective experience and work samples, the instant case does not meet that standard.

## IV. CONCLUSION

For the reasons set forth above, it is **ORDERED and ADJUDGED** that Plaintiff's Amended Motion for Summary Judgment (ECF No. 66) is **DENIED**, and Defendant's Motion for Summary Judgment (ECF No. 64) is **GRANTED**. The Clerk shall **CLOSE** this case. All pending motions, if any, are **DENIED** *as moot*. A separate judgment will issue pursuant to Rule 58 of the Federal Rules of Civil Procedure.

**DONE and ORDERED** in chambers at Miami, Florida, this 29th day of November 2018.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Jonathan Goodman, U.S. Magistrate Judge*
*Etheria Rolle-Collie*, pro se
*Counsel of record*